UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| E.H., a minor, by his parent, B.R.,<br><br>   Plaintiff,<br><br>v.<br><br>SCHOOL DISTRICT OF BELOIT,<br><br>   Defendant. | Case No.  3:25-cv-00757<br><br>**COMPLAINT**<br><br>Jury Trial Demanded |

  Plaintiff, E.H., a minor, by his parent and legal guardian, B.R., brings this civil rights action against Defendants School District of Beloit for violations of E.H.'s rights to be free from discrimination on the basis of disability under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973.

**PRELIMINARY STATEMENT**

1. E.H. is a 12-year-old child with disabilities who has attended school in the School District of Beloit for his entire education. E.H. is diagnosed with several mental health conditions, speech/language disorders, and has a history of trauma which impacts his mental health and development. E.H.'s disabilities significantly impair his ability to regulate his emotions, and his symptoms include pervasive suicidality. E.H. has a history of unsafe behaviors in school and at home towards himself and others.

2. The School District of Beloit ("SDB") has used increasingly harsh disciplinary measures and varying forms of exclusion to manage E.H.'s disabilities and behavioral challenges. E.H. has

been segregated to a virtual learning platform, where he has no in-person access to his peers, educators, or educational environments.

3. Rather than provide E.H. with the supports and services he desperately needed, SDB utilized exclusionary measures to manage E.H.'s disability-related behaviors, including frequent in-school and out-of-school suspensions, the use of law enforcement, and permanent expulsion.

4. SDB eventually permanently expelled E.H. from SDB for an incident directly related to E.H.'s known disabilities, in violation of his right to be free from discrimination on the basis of his disabilities.

5. SDB's patent disregard of E.H.'s federal rights and its exclusion of E.H. from his education due to his disability-related behaviors violates the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973.

6. As a result of SDB's actions, E.H. has experienced emotional distress and anguish, including exacerbation of E.H.'s psychological conditions, isolation of E.H., and damage to E.H.'s reputation in the community and among his peers. E.H. has lost the opportunities to learn and develop necessary skills during crucial years, to participate in his education and extracurricular activities, and to develop friendships and relationships with his peers and teachers, opportunities he will never get back.

7. This action seeks preliminary and permanent injunctive relief under Title II of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 et seq., and Section 504 of the Rehabilitation Act of 1973 (Section 504), 29 U.S.C. § 794 against Defendant School District of Beloit.

8. This action seeks compensatory damages under the ADA and Section 504 against Defendant SDB.

9. This action seeks reasonable attorneys' fees and costs under the ADA and Section 504 against Defendant SDB.

## JURISDICTION AND VENUE

### A. Jurisdiction

10. This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 2000d et seq. (the Civil Rights Act of 1964), 42 U.S.C. § 12101 et seq. (ADA), 29 U.S.C. § 794 (Section 504), and 28 U.S.C. § 1331 (federal question jurisdiction).

### B. Venue

11. The Western District of Wisconsin is the proper venue for this action because Plaintiff resides in, and Plaintiff's claims arose within the geographical boundaries of the Western District of Wisconsin within the meaning of 28 U.S.C. § 1391(b).

## PARTIES

12. Plaintiff E.H. is a minor child who resides in Beloit, Rock County, Wisconsin in the Western District of Wisconsin. At all times relevant to this Complaint, he was a resident of Beloit, Wisconsin. When this Cause of Action arose, E.H. was a student in the School District of Beloit. His parent and legal guardian, B.R., pursues his claims on his behalf.

13. Defendant School District of Beloit is a public school district in Beloit, Rock County, Wisconsin. SDB is a Wisconsin Public School District. SDB's district offices are located at 1500 Fourth Street, Beloit, Wisconsin, 53511. SDB is a common school district that, pursuant to the Wisconsin Constitution and state statutes, operates under the direction of the School District of Beloit Board of Education ("Board"), an eight-member elected school board. The Board designates responsibility for the administration of SDB to the Superintendent of Schools,

currently Defendant Willie Garrison. SDB serves approximately 5,100 students in preschool through 12th grade. SDB is a recipient of federal funds and is subject to all applicable state and federal special education and non-discrimination laws.

## FACTUAL ALLEGATIONS

14. E.H. is a twelve-year-old child with disabilities.

15. E.H.'s biological mother is B.R.; he resides with her and his one sibling.

16. E.H.'s primary residence is located within the boundaries of SDB. He has been a student of SDB for his entire education through present.

17. E.H. is currently enrolled at SDB as an expelled student entitled to educational services through an Individualized Education Program ("IEP").

18. E.H. has attended and/or had his IEPs and Section 504 Plan managed by SDB at all times relevant to this Complaint.

19. During the 2024-2025 school year, E.H. attended Fran Fruzen Intermediate School in SDB.

20. SDB is a Wisconsin Public School District organized under the laws of the State of Wisconsin and the recipient of federal funds through various U.S. federal programs.

21. E.H. was born tongue tied and is diagnosed with Major Depressive Disorder ("MDD"), Oppositional Defiant Disorder ("ODD"), Attention-Deficit/Hyperactivity Disorder, combined type ("ADHD"), Mood Disorder, Speech Sound Disorder, Childhood Onset Fluency Disorder, and Language Disorder. E.H. also has a trauma history which impacts his social and emotional development, mental health, and well-being.

22. E.H. has a history of suicidal behavior which has resulted in E.H.'s hospitalizations in January 2024, July 2024, and March 2025.

23. The hallmarks of E.H.'s disabilities include deficits in emotional regulation, executive functioning, and social functioning, and significant mood instability.

24. E.H.'s disabilities manifest as behavioral challenges, dangerous behaviors towards himself and others, suicidality, self-harm, conflicts with peers, defiance, disruptive behaviors, and frequent and intense emotional outbursts.

25. E.H.'s disabilities significantly impair his ability to de-escalate from a heightened emotional state and respond to his environment in appropriate ways.

26. E.H.'s behavioral challenges are symptoms of E.H.'s disabilities and form a part of their diagnostic criteria.

27. E.H.'s behavioral challenges began at an early age and are documented throughout SDB's educational records of E.H.

28. E.H.'s disabilities adversely impact his educational performance such that he requires specially designed instruction through an Individualized Education Program (IEP) under the IDEA.

29. E.H.'s doctor provides medication management to help manage and alleviate the symptoms of E.H.'s depression, anxiety, mood disorder, and ADHD.

30. E.H. works with an outside counselor/therapist and has received outside therapy since a young age.

31. E.H. receives mental health support and services through Rock County's Children's Long Term Support program and Comprehensive Community Services program.

32. E.H. was admitted to day treatment programming in the past for his mental health but was discharged due to explosive disruptive behaviors.

33. At five years old, E.H. was evaluated for special education due to his speech and language disorders; he was found eligible for services through an Individualized Education Program ("IEP") under the category of Speech and Language Impairment on January 17, 2018.

34. In the spring of 2020, E.H. was referred for re-evaluation for special education due to concerns about his struggles with attention, impulse control, regression of skills, and disruptive and aggressive behavior at school.

35. Shortly after the re-evaluation referral was made for E.H., mandatory school shutdowns occurred due to the COVID-19 pandemic, including SDB.

36. E.H.'s re-evaluation occurred in the fall of 2020, and SDB's evaluation report indicated that distance learning may impact the accuracy of the evaluation.

37. On November 12, 2020, SDB found E.H. no longer eligible for special education.

38. SDB rejected E.H.'s eligibility under Speech and Language Impairment as no longer meeting criteria.

39. Although E.H. met criteria for eligibility under Other Health Impairment due to his social/emotional and behavioral challenges, SDB concluded that he did not require specially designed instruction to meet his needs and dismissed E.H. from his IEP.

40. Between 2020 through 2024, E.H.'s social, emotional, and behavioral functioning at school and at home continued to deteriorate.

41. By age 11, between 2020-2024, SDB issued a total of 125 behavioral referrals to E.H. for offenses such as: serious threats and intimidation; threat with a weapon; physical altercations; physical aggression; harassment; and bullying.

42. BSD managed E.H.'s behavioral struggles and disability related needs through ineffective accommodations, informal removals from class and school, virtual learning, and formal disciplinary measures including in-school suspensions, out-of-school suspensions, and SDB's eventual permanent expulsion of Student.

43. In January 2024, E.H. exhibited serious suicidality and was admitted to inpatient hospitalization, where he was diagnosed with major depressive disorder.

44. E.H. has made and expressed suicidal planning with knives in the past and has described those plans to his parent.

45. Following E.H.'s hospitalization, B.R. communicated her concerns to SDB officials regarding E.H.'s negative and destructive behaviors, as well as E.H. missing instruction due to his behaviors.

46. In response to E.H.'s suicidality, hospitalization, and B.R.'s expressed concerns, SDB referred E.H. for a Section 504 Evaluation for accommodations and modifications.

47. E.H.'s 504 Evaluation Report included a report from E.H.'s teacher stating that E.H. does not follow classroom rules or instruction, is "extremely disruptive" in the classroom, and is no longer able to be redirected back to classroom expectations. E.H.'s teacher also reported concerns for E.H.'s safety, the safety of other students in the classroom, and her own safety due to recent behavioral events.

48. As a part of the 504 Evaluation, E.H.'s outside counselor reported concerns to SDB regarding E.H.'s mental and emotional health and stability and had partnered with SDB to help work with E.H. on developing coping strategies.

49. E.H.'s 504 Evaluation Report documented clinically significant ranges for E.H. in the areas of aggression, conduct problems, anxiety, and depression.

50. SDB documented that E.H. continued to escalate the inappropriate and dangerous behaviors towards himself and others.

51. On April 10, 2024, a Section 504 Plan ("504 Plan") was developed for E.H. describing the educational impact of his disabilities and need for accommodations as:

> E.H. requires multiple scheduled breaks throughout the day, intervention/discussion with student services and administration, and struggles to self-regulate independently or appropriately without significant staff intervention. E.H. makes statements involving self-harm and harm to others regularly. He regularly leaves the classroom without permission and becomes defiant when attempts to re-engage or assist him in [regulating] in order to return to the classroom setting. Many days, he has to be sent home due to his refusal to cooperate with classroom/school rules surrounding safety.

52. SDB reported E.H.'s functional communication skills, in part, as:

   a. When struggling, E.H. can be highly inappropriate, including self-harm talk or harm of others;

   b. E.H. can be severely disrespectful to adults when escalated, including behaviors such as name-calling, refusal, and defiance.

53. SDB documented E.H.'s previous accommodations as: participating in check in/check out as social-emotional intervention, multiple schedule changes to meet behavioral/emotional needs, and multiple disciplinary instances; participating in a small group sessions with the social worker once per week.

54. SDB documented its pervious interventions and their effects/E.H.'s progress as:

   a) Check in check out: limited progress

   b) As-needed breaks throughout the day: no progress

   c) Scheduled breaks throughout the day: limited progress

   d) 1:1 support from student services: limited progress

    e) Parent contact: limited progress

    f) Earned rewards: limited progress

    g) Loss of privileges: limited progress

    h) Alternative location during unstructured time: limited progress

55. Despite the limited or lack of progress on the previous interventions, SDB developed the following accommodations for E.H.'s 504 Plan:

    a) Structured/scheduled breaks

    b) Daily check-in/check-out

    c) Extended time for written assignments and larger projects

    d) Reduced assignments when demonstrating mastery

    e) Preferential seating

    f) Daily schedule written

    g) Assignment notebook with daily schedule

56. During the 2023-2024 school year, SDB issued 18.5 days of out-of-school suspension and 6 days of in-school suspension to E.H.

57. On April 26, 2024, SDB suspended E.H. for an incident of unsafe and disruptive behavior involving a broken/sharp spoon and making threats with the spoon to harm himself and others.

58. SDB held a 504 placement evaluation ("manifestation determination" review as the term is understood and used interchangeably) and rejected any causal relationship between the April 26, 2024 incident and E.H.'s disability, despite its report of the following:

> E.H. struggles with mental health issues. He was previously hospitalized due to his depression and threats of self-harm. He continues to express feelings of depression and talks about wanting to die… E.H. has also been referred to Mercy Health Day Treatment,

and his intake date is May 9th. He has participated in 12 suicide risk assessments during the current school year.

59. Following the April 26, 2024, SDB placed E.H. on virtual learning for the remainder of the 2023-2024 school year.

60. In July 2024, E.H. experienced another mental health crisis related to suicidal behaviors and was hospitalized again.

61. E.H.'s behavior reports include suicidal behaviors involving statements of self-harm and dangerous behaviors to self and others throughout his educational history at SDB.

62. On September 4, 2024, E.H.'s exhibited signs of escalation and dysregulation throughout the day, requiring the intervention of numerous SDB staff.

63. While being removed from a classroom by SDB employee, E.H. made remarks in sum and substance about how he was always getting in trouble and subsequently expressed to school personnel that he was going to kill himself.

64. SDB conducted a Suicide Risk Assessment which revealed a *moderate risk* for suicide.

65. On the evening of September 4, 2024, E.H. posted to social media stating that he was "at the edge of doing it," referring to suicidal behavior and ideation.

66. The following morning on September 5, 2024, SDB that while on the school bus, E.H. allegedly revealed a kitchen knife to another student and held the knife to his own neck as if he was going to cut his own throat. SDB reported that E.H.'s peer took the knife from E.H. and gave it to the bus driver.

67. In response to the incident, SDB conducted a Violence Risk Assessment, suspended E.H., made a report to law enforcement, and later referred E.H. for expulsion proceedings.

68. On September 9, 2024, a manifestation determination review was held pursuant to Section 504's procedural safeguards.

69. Under the manifestation determination review document section asking whether new or additional evaluation/data is needed, SDB described yes, because the team believed a referral for an initial special education evaluation was appropriate for E.H.

70. SDB proceeded with the manifestation review without gathering the necessary additional information and data.

71. In its manifestation determination report, SDB described that in the day preceding the incident, E.H.:

> spent minimal time in the classroom due to behaviors that included multiple swearing and vulgar use of language, hitting another student and not being in the area he was assigned to. He spent a very large amount of time with student services and admin.

72. SDB included numerous reports of triggering events and disruptive behaviors of E.H. throughout September 4, 2024, including behaviors leading up to his statements regarding self-harm and suicide.

73. SDB concluded that E.H.'s diagnosis of depression "did not correlate" with the September 5, 2024 incident, and that the team could not "link" E.H.'s conduct with the disabilities identified in his 504 Plan.

74. SDB concluded that E.H.'s conduct on September 5, 2024 was not caused by nor directly related to his disabilities.

75. SDB referred E.H. for an initial special education evaluation at the end of the meeting on September 9, 2024.

76. On September 23, 2024, upon recommendation by SDB, the SDB School Board ordered E.H.'s expulsion through age 21 and ordered that he shall not be eligible for reinstatement in SDB.

77. E.H. was 11 years old at the time of his permanent expulsion.

78. E.H.'s expulsion through age 21 is effective in all Wisconsin public school districts pursuant to Wisconsin's expulsion laws.

79. SDB has segregated E.H. to fully virtual-instruction, where he has no access to in-person interactions with teachers or peers.

80. Through SDB's expulsion, E.H. is prohibited from being on SDB property and attending any school functions in SDB.

81. Upon information and belief, SDB officials have made numerous reports to law enforcement of E.H. due to E.H.'s disability-related behaviors.

82. On February 20, 2025, E.H. was found eligible for special education and related services under an IEP, meeting criteria under both Emotional Behavioral Disability and Other Health Impairment.

83. E.H.'s evaluation report states that E.H. meets criteria based upon his pervasive unhappiness, depression, or anxiety, behaviors that interfere with social development, and patterns of behavior across settings and individuals presenting risks to the physical safety of himself or others.

84. SDB's evaluation also reported that E.H. demonstrates frequent and intense observable behaviors which adversely affect his educational performance over a long period of time, as evidenced by his *school records* and *pattern of behavior since 2017*— information which was readily available to SDB at the time of E.H.'s September 9, 2024 manifestation determination review.

85. In March 2025, E.H. experienced serious suicidal behaviors resulting in hospitalization. E.H. was so concerned about his own mental health and suicide-related thoughts that he called

law enforcement for assistance on his own behalf. Law enforcement subsequently transported E.H. to the local emergency room for medical attention and treatment.

86. Throughout the period of SDB's exclusion and segregation of E.H., SDB provided a full day of public education to other students at SDB, including in the SDB building and classrooms where E.H. otherwise would have attended.

## CAUSES OF ACTION

### COUNT I: VIOLATION OF § 504 – FAPE

87. Plaintiffs reallege and reincorporate all previous paragraphs.

88. SDB is a recipient of federal financial assistance and is therefore obligated to comply with Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and its implementing regulations 34 C.F.R. §104 et seq.

89. E.H. is an individual with disabilities and multiple diagnoses. E.H.'s disabilities limit major aspects of his life, making many activities difficult for him, especially the ability to regulate his emotions and behaviors, focus, learn, and properly interact with his environment.

90. At all times pertinent to this Complaint, E.H. was a resident of Beloit and qualified for enrollment at SDB.

91. E.H. is a qualified individual under Section 504.

92. Section 504 requires equal opportunity of a qualified person with a disability to participate in or benefit from educational aid, benefits, or services. 34 C.F.R. § 104.4.

93. The provision of a Free Appropriate Public Education under Section 504 refers to the provision of related aids and services, accommodations, and modifications designed to meet the individual academic, behavioral, social, and emotional needs of students with disabilities as adequately as the needs of students without disabilities are met. 34 C.F.R. § 104.33.

94. SDB's 504 evaluation was not sufficiently comprehensive to assess E.H.'s academic and behavioral needs and thus failed to provide adequate information to assist the team in developing an appropriately supportive plan for E.H.

95. SDB's 504 Plan was inadequate to support E.H.'s behavioral needs, and E.H.'s behaviors continued to escalate.

96. SDB denied E.H. a FAPE in violation of Section 504 when it failed to develop necessary, appropriate, and adequate support for E.H. through his 504 Plan to manage his disability-related behaviors.

97. SDB discriminated against E.H. on the basis of his disabilities in violation of Section 504.

98. SDB's violations of Section 504 have caused and continue to cause E.H. harm.

99. At the time SDB violated Section 504, it had knowledge that a harm to a federally protected right was substantially likely and failed to act upon that likelihood.

### COUNT II: VIOLATION OF § 504 – PROCEDURAL SAFEGUARDS

100. Plaintiffs reallege and reincorporate all previous paragraphs.

101. SDB is a recipient of federal financial assistance and is therefore obligated to comply with Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and its implementing regulations 34 C.F.R. §104 et seq.

102. E.H. is an individual with disabilities and multiple diagnoses. E.H.'s disabilities limit major aspects of his life, making many activities difficult for him, especially the ability to regulate his emotions and behaviors, focus, learn, and properly interact with his environment.

103. At all times pertinent to this Complaint, E.H. was a resident of Beloit and qualified for enrollment at SDB.

104. E.H. is therefore a qualified individual under Section 504.

105. Section 504 prohibits public school districts from discriminating against students on the basis of their disabilities when imposing discipline.

106. Section 504's procedural safeguards require school districts to evaluate students with disabilities prior to any significant change in placement, including disciplinary changes in placement such as long-term suspensions, removals, or expulsions.

107. The purpose of the 504 placement "evaluation" (or manifestation review, as the term is understood and interchangeably used) is to determine whether the conduct subject to the proposed discipline is based on the student's disability. *Id*. at § 104.35(a).

108. If a school district determines that the student's conduct was disability-based, the school district is prohibited from carrying out any further discipline, as doing so would deny the student equal educational opportunity by excluding them based on disability, in violation of Section 504.

109. SDB's manifestation determination incorrectly found that the incident on September 5, 2024 was not a manifestation of E.H.'s disabilities.

110. SDB was clearly concerned for E.H.'s mental health condition and suicidality, evidenced by its conducting of a Suicide Risk Assessment when the initial suicidal behaviors were exhibited.

111. E.H. perseverated on suicidal thoughts and exhibited suicidal behaviors throughout the evening prior to the suicidal threat with a knife the following morning on September 5, 2025 at the beginning of the school day.

112. E.H.'s behaviors throughout September 4, 2024 and escalating into the morning of September 5, 2024 were precisely and directly related to all known information and

documentation SDB maintains about E.H.'s disabilities, diagnoses, and the symptoms and manifestations such.

113. SDB's finding that the September 5, 2024 incident was not a manifestation of E.H.'s disability is contradictory to all of E.H.'s educational records and patterns of behavior since 2017, as later emphasized by SDB in E.H.'s initial special education evaluation report.

114. SDB wrongfully excluded E.H. from and denied him the benefits of, including meaningful access to, SDB educational services on the basis of his disabilities in violation of Section 504 when it permanently expelled him for behaviors caused by his disabilities and known behavioral challenges that are symptoms of his diagnoses.

115. SDB discriminated against E.H. on the basis of his disabilities in violation of Section 504.

116. SDB's violations of Section 504 have caused and continue to cause E.H. harm.

117. At the time SDB violated Section 504, it had knowledge that a harm to a federally protected right was substantially likely and failed to act upon that likelihood.

## COUNT II: VIOLATION TITLE II OF THE ADA

118. Plaintiffs reallege and reincorporate all previous paragraphs.

119. Defendant SDB is a public school district that receives federal funding and is therefore subject to Title II of the ADA, 42 U.S.C. § 12101 et seq.

120. E.H. is an individual with disabilities and multiple diagnoses. E.H.'s disabilities limit major aspects of his life, making many activities difficult for him, especially the ability to regulate his emotions and behaviors, focus, learn, and properly interact with his environment.

121. At all times pertinent to this Complaint, E.H. was a resident of Beloit and qualified for enrollment at SDB.

122. E.H. was therefore at all relevant times a "qualified individual with a disability" as defined in 42 U.S.C. § 12131(2).

123. Title II of the ADA prohibits recipients of federal funds from intentionally discriminating against a person on the basis of disability.

124. At all times relevant to this complaint, the District was aware of E.H.'s disabilities.

125. SDB discriminated against E.H. on the basis of his disabilities by:

   a. Repeatedly removing and excluding E.H. from the classroom, effectively denying his access to an equal education;

   b. Using disciplinary measures to manage E.H.'s disability-related behaviors;

   c. Utilizing law enforcement to address E.H.'s disability-related needs;

   d. Failed to develop appropriate and adequate reasonable accommodations to support E.H.'s disabilities and behavioral challenges; and

   e. Intentionally ignoring E.H.'s disability-related needs.

126. Upon information and belief, SDB employees do not subject non-disabled students or students with non-behavioral disabilities to the same type of conduct.

127. SDB excluded E.H. from participation in and denied him the benefits of SDB's educational services on the basis of his disabilities in violation of the ADA.

128. SDB denied E.H. the opportunity to participate in or benefit from an aid, benefit, or services on a basis that is equal to, and as effective as, that provided to others.

129. SDB's discriminated against E.H. on the basis of his disabilities, in violation of 28 C.F.R. § 35.130(b)(1).

130. SDB's violations of the ADA have caused and continue to cause E.H. harm.

131. At the time SDB wrongfully removed E.H. from school, it had knowledge that a harm to a federally protected right was substantially likely and failed to act upon that likelihood.

WHEREFORE, Plaintiff prays for the following relief:

1. Declare that SDB has violated E.H.'s rights as alleged here.
2. Order preliminary and permanent injunction against SDB for enforcement of its September 23, 2024 expulsion order of E.H.
3. Order SDB to amend E.H.'s September 9, 2024 manifestation determination to correctly reflect that E.H.'s September 5, 2024 behavior was a manifestation of his disabilities.
4. Order SDB to nullify, void, and set aside its September 23, 2024 expulsion order of E.H.
5. Award compensatory and punitive damages in an amount to be proven at hearing and to the extent allowable by law.
6. Order SDB to pay all of Complainants' attorneys' fees and costs incurred herein.
7. Grant such other and further relief as this Court deems proper under the circumstances.

A jury trial is requested.

Respectfully submitted this 8th Day of September 2025,

_____
Ally Seneczko
State Bar No. 1133724
Attorney for Plaintiffs

**DISABILITY RIGHTS WISCONSIN**
1205 S. 70th Street, Ste. 500
Milwaukee, WI 53214
Phone: 414-727-0929
Fax: 833-635-1968
Email: allys@drwi.org